## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

———————————

WESTERN HERITAGE INSURANCE COMPANY,

       Plaintiff,

vs.                                                                No. CIV-06-1027 WPJ/WDS

PETER LOPEZ, CLUB HELL, LLC, a Nevada
Limited Liability Company; CLUB HELL, LLC
d/b/a CLUB HELL, INC.; BENNIE MARTINEZ,
individually and d/b/a CLUB HELL, INC.; and
THE CITY OF ALBUQUERQUE,

       Defendants.

### MEMORANDUM OPINION AND ORDER
### DENYING MOTIONS FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court upon a Motion for Summary Judgment Denying

Western Heritage's Claim for a Declaration that it Owes No Defense, filed by Club Hell LLC

and Bennie Martinez ("Club") on May 14, 2007 (**Doc. 53**).  Defendant Peter Lopez joins in the

summary judgment motion filed by Club.  (**Doc. 63**).  Plaintiff Western Heritage Insurance

Company ("Western Heritage") is an insurer seeking declaratory judgment and reimbursement

for its defense of an underlying personal injury case which was filed in state court.  In the facts

associated with the related state court case, Peter Lopez, one of the named Defendants in this

federal action, was severely injured after leaving an event sponsored and hosted by the other

named Defendants, in November of 2003.  In this motion, Club seeks an order denying

Plaintiff's claim for declaratory judgment, asserting that as a matter of law, Western Heritage

owes Club a defense.  Having considered the parties' briefs and the applicable law, I find that

Club's motion and Mr. Lopez' joined motion are not well-taken and will be denied.

## BACKGROUND

### I.  Facts Leading to <u>Lopez</u> Lawsuit[1]

Defendant Bennie Martinez owns and operates Club Hell, Inc., and Club Hell, LLC. Club Hell, LLC operates Club Hell, Inc., which is located at the Albuquerque Convention Center in Albuquerque, New Mexico ("Convention Center").  For purposes of this motion, these Defendants may be referred to as "Club," or "Defendant").

Peter Lopez and Rachel Sanchez ("Lopez" or "<u>Lopez</u> plaintiffs") attended a Halloween event on November 1-2, 2003, at the Convention Center which was hosted by Club Hell and the City of Albuquerque. Lopez suffered serious personal injuries when he got caught in the midst of a riot that erupted outside of the Convention Center and on adjoining City sidewalks and streets. He was struck repeatedly by unknown assailants, many of whom were intoxicated.  Lopez alleged that while attempting to help a friend who was being beaten, he himself was threatened by a person with a screwdriver, and felt two sharp blows to his back after which he lost consciousness.  He further alleges that he was kicked and beaten while he lay on the ground unconscious.  Peter Lopez is a quadriplegic as a result of his injuries.

On November 1, 2005, Peter Lopez and Rachel Sanchez (<u>Lopez</u> plaintiffs') filed suit in State District Court in Bernalillo County, asserting claims of personal injury and loss of consortium against Club Hell, Bennie Martinez, Prestige Security (which provided security services at the event), Aramark (which provided alcohol services), the City of Albuquerque, and the Convention Center (described as "a governmental entity" and "agency of the City").

### II  Facts Leading to Filing of the Federal Complaint by Western Heritage

---

[1]  The <u>Lopez</u> First Amended Complaint, from which the following facts are taken, is attached to the federal complaint as Exhibit 1.

In the fall of 2003, prior to hosting the event at which the <u>Lopez</u> injuries occurred, Club entered into a contract with the City of Albuquerque ("City") to sponsor and host a Halloween party to take place at the Convention Center on November 1-2, 2003.  The contract required the Club to purchase liability insurance coverage for the event, and to name the City as an Additional Insured.  Club contacted the Manuel Lujan Agency and requested the required insurance for the event. Western Heritage Insurance Company ("Western Heritage") issued a commercial special event policy ("Policy") to the Club, on October 30, 2003, naming the City as an Additional Insured.

The Policy includes as an endorsement to that policy an assault or battery exclusion which states:

> This policy does not apply to "bodily injury," "property damage" or "personal and advertising injury" arising out of assault or battery or out of any act or omission in connection with the prevention or suppression of such acts, including failure to warn, train or supervise, whether caused by or at the instigation of the insured, his employees, patrons or any other person.

Resp. Ex. 2B.[2]

The subject of the federal action which is the focus of the coverage dispute between Western Heritage and Club, Bennie Martinez and the City, is the claim filed by the <u>Lopez</u> plaintiffs against Club. When the <u>Lopez</u> lawsuit was filed, Plaintiff initially rejected tenders of defense by Club and the City based on the assault and battery exclusion, but subsequently provided a defense.  Whether the defense was provided subject to a reservation of rights is one

---

[2]    Both Plaintiff and Defendant have numbered their exhibits, resulting in a confusion which could have been avoided by a short consultation between the parties prior to filing the pleadings.  Also, Defendant's brief in chief contains exhibits 1 through 7; the reply contains exhibits 1 through 5.  The Court will therefore refer to exhibits by the pleading instead of party. Exhibits to the response filed by Plaintiff are contained in a separately filed appendix (Doc. 77) which also serves as Plaintiff's exhibits in support of its own summary judgment motion.

of the issues raised in this federal action.  In the federal Complaint, Western Heritage contends

that it is not obligated to defend or indemnify Club because the subject policy has certain terms,

conditions and exclusions that preclude the duty to defend because of an assault and battery

exclusion in the Policy.

Club contends that Plaintiff's denial of a defense constitutes a waiver of policy defenses,

including the assault and battery exclusion.  Both Club and the City have asserted counterclaims

against Western Heritage, based on a failure to provide a defense and bad faith in refusing to pay

reasonable settlement demands.  Plaintiff denies that its actions have waived its right to assert

the exclusions and defenses to coverage, denies that its actions were in bad faith, and seeks

reimbursement for defense costs incurred.  In addition, the City asserts a cross-claim against

Club for failing to provide insurance and indemnity as required by the contract between those

parties.  The Manuel Lujan Insurance Agency, the agency which underwrote the subject Policy,

is a Third Party Defendant in this action.

Western Heritage has filed its own motion for summary judgment, which is pending.

Doc. 71.  The Court's analysis and findings herein address only Club's motion for summary

judgment, and the joinder filed by Peter Lopez.

## III.    Legal Standard

Summary judgment is appropriate when the pleadings, deposition transcripts, affidavits

and evidentiary material show that there is no genuine issue as to any material fact and the

moving party is entitled to judgment as a matter of law.  See Fed. R. Civ. P. 56(c); Welding, 353

F.3d at 1217.  A party can obtain judgment as a matter of law in its favor "only if the proof is all

one way or so overwhelmingly preponderant in favor of the movant as to permit no other

rational conclusion." Gillogly vs. GE Capital Assurance (10th Cir. 2005) (quoting Conoco Inc. v.

4

ONEOK, Inc., 91 F.3d 1405, 1407 (10th Cir. 1996).

Parties have stipulated that New Mexico law governs this case. Doc. 28 at 3.

**IV.     Statement of Facts**

The Court will omit from the recitation of undisputed facts those statements set forth by Club which are more appropriately describes as legal arguments.  An example of this is Club's Statement of Undisputed Material Fact ("SUMF") number 7 asserting misrepresentation by Western Heritage as well as a legal conclusion that Plaintiff had waived its policy defenses based on certain correspondence.

A.     Undisputed Facts

The bare-bone undisputed facts are as follows.  On January 27, 2006, Western Heritage wrote to Bennie Martinez advising that there was no coverage for the claims asserted in the original Lopez complaint, and that Western Heritage would not provide a defense to Club. On March 14, 2006, Western Heritage sent a letter, which was copied to Bennie Martinez, indicating that Western Heritage was denying a defense to Club under the First Amended Complaint filed in the Lopez lawsuit.

Paragraph 78 in the First Amended Complaint contains the following language:

> Given the significant injuries suffered by Peter Lopez and the fact that the individuals were never located, it is unknown what the intent of such individuals may have been. More particularly, it is unknown whether said individuals intended to attack Peter Lopez, or whether Peter Lopez was unintentionally injured in the course of and as a consequence of said individuals attempting to defend themselves and/or others from persons other than Mr. Lopez and his friends.

While not presented as an undisputed fact by Defendant, it is conceded that Western Heritage ultimately agreed to defend Club in the underlying Lopez lawsuit.

On April 7, 2006, May 2, 2006, and May 5, 2006, Douglas Baker, Club's counsel,

5

informed Western Heritage that Club would not accept a defense in the <u>Lopez</u> lawsuit with a reservation of rights.  Mr. Baker also advised that Western Heritage had lost its ability to defend under a reservation of rights by denying a defense to both the Complaint and First Amended Complaint.  Mem. Brf. Ex. 2.  On May 5, 2006, Western Heritage (through coverage counsel Neil Selman) responded by stating that the insurer's initial denial did not result in a waiver of policy defenses.  Western Heritage stated that it expected a written answer by Club as to whether Club accepted the offered defense subject to a reservation of rights.  Mem. Brf. Ex. 7.

A flurry of letters passed between Mr. Baker and the Selman law firm from late April to June 2006.  <u>See</u>, <u>e.g.</u>, Resp., Exs. 3D, 3E, 7, 8, 9; Mem. Brf. Exs. 2 (letters of April 7, May 2 and May 5, 2006) and Ex. 7.  Parties ascribe different legal significance to this correspondence, but the gist of the letters can fairly be described as the insurer offering a defense to Club subject to a reservation of rights, and Club agreeing to accept the defense without a reservation of rights.

Western Heritage does not dispute the purely factual statements offered by Club, but disagrees with the legal inferences Club attaches to the facts.  I agree that Club is not entitled to summary judgment based on these facts. Merely establishing the absence of genuinely disputed facts will not ensure summary judgment for a movant.  The movant must also demonstrate that the applicable controlling law requires a decision in the movant's favor.  Conversely, to defeat summary judgment, the nonmovant must articulate a viable legal theory entitling it to relief should it prevail on the facts at trial.  See <u>Swanson v. Fields</u>, 814 F.Supp. 1007, 1010 (D.Kan)., <u>aff'd without opinion</u>, 13 F.3d 407 (10th Cir. 1993);  <u>Koenig v. Perez</u>,104 N.M. 664 (1986) (Under New Mexico law, summary judgment may properly be granted when the facts themselves are not in dispute, but only the legal effects of the facts presented for determination). Also, for purposes of this motion, the Court must view the evidence most favorable to Western

Heritage as the nonmoving party.   See, Bisbee v. Bey, 39 F.3d 1096, 1100 (10th Cir.1994), cert.

denied,  515 U.S. 1142 (1995)).

B.       Club's Request to Strike Facts

         In its reply, Club moves to have the facts presented by Western Heritage stricken on the

basis of Western Heritage's failure to allow discovery.  Parties have been afforded a preview of

my  ruling on this question when the Court addressed Plaintiff's Motion for Leave to File

Surreply:

> I fail to see how either the stay on discovery, or Plaintiff's contention that the material
> facts are undisputed necessarily means that Plaintiff should not be allowed to respond to
> Club's summary judgment motion. Western Heritage's position is that the disputes in this
> case arise from the legal inferences to be drawn from the undisputed facts. . . . Club's
> request to strike Plaintiff's statement of facts resembles a thinly disguised request to
> punish Western Heritage for its refusal to allow Club to take the depositions of certain
> Western Heritage representatives under Fed.R.Civ.P. 30(b)(6) . . . The Court has
> previously addressed this issue, denying Club's request for sanctions based on these
> representatives' failure to appear for depositions. In denying the request, Judge Schneider
> determined that there was not a sufficient effort made by Defendants "to properly consult
> with Plaintiff's counsel prior to scheduling the deposition at issue" and that Plaintiff had
> properly filed a notice of non- appearance and motion for protective order. Doc. 101.

Order, Doc. 113 at 2-3.

         For the above reasons, Club's request to strike facts Plaintiff' statement of facts, as well

as its response to Club's statement of undisputed facts, is hereby denied.

## DISCUSSION

         In its motion for summary judgment, Club contends that Western Heritage owes Club a

defense as a matter of law because (1) the First Amended Complaint in the underlying case

alleges facts that bring the claims within coverage, (2) the insured did not have the Policy at the

time of the injury and thus Western Heritage's reliance on the specific Policy language, as

opposed to the expectation of a reasonable insured, is misplaced, (3) Western Heritage waived

7

its policy defenses by improperly denying a defense when the Complaint and First Amended Complaint were tendered and then later changing its coverage position and defending; and (4) Western Heritage lost its ability to reserve any rights when it substituted its counsel for Club's in the Lopez lawsuit, knowing that Club permitted that substitution only if a defense was to be provided without any reservation of rights.

I address each of these theories in turn.

## I.        Coverage Based on First Amended Complaint

Defendant contends that paragraph 78 the First Amended Complaint in the underlying Lopez case alleges facts that bring the claims within coverage. Western Heritage disputes this contention.

There is a distinction between an insurer's duty to defend and the duty to pay under the terms of the same policy. Foundation Reserve Ins. Co., Inc. v. Mullenix 97 N.M. 618 (1982). The insurer is obligated to defend, regardless of the ultimate liability of the insured, if the allegations of the injured third party's complaint show that an accident or occurrence comes within the coverage of the policy. The question for the insurer in such cases is whether the injured party's complaint states facts which bring the case within the coverage of the policy, not whether he can prove an action against the insured for damages. The insurer must also fulfill its promise to defend "even though the complaint fails to state facts with sufficient clarity so that it may be determined from its face whether or not the action is within the coverage of the policy, provided the alleged facts tend to show an occurrence within the coverage." 97 N.M. at 620.

Club does not contend that Western Heritage had the duty to either defend or indemnify based on the original Lopez complaint. Rather, it contends that, based on the allegations in the First Amended Complaint filed on November 1, 2005 (specifically, paragraph 78), no reasonable

insurer could fail to understand that it was bound to defend the case, notwithstanding a valid assault and battery exclusion in the Policy.

The Court is obligated to construe all ambiguities in favor of the insured and in favor of coverage.  State Farm Fire & Cas. Co. v. Ruiz et al., 36 F.Supp. 2d 1308, 1313 (D.N.M. 1999). However, in this case, the amendment to the original complaint does not add any new allegations or facts which would lead the Court to conclude that, as a matter of law, Western Heritage owed Defendants a duty to defend.

According to the police report that was completed on the underlying incident which led to the Lopez lawsuit, the encounter was listed as a crime of "aggravated battery with deadly weapon."  Resp., Ex. 5.  Yet, paragraph 78 alleges that the harmful acts could have resulted from negligence because Peter Lopez' assailants were never located and the intent of these individuals is not known.  Despite the recitation of actual facts in the complaint which depict anything but an accident, Defendants suggest that the cause of Peter Lopez' quadriplegia was not sharp blows to his back with a sharp instrument or the subsequent kicking and beating he took while he lay on the ground.  Instead, they propose that Peter Lopez' injuries "could have occurred in a fall or could have occurred when someone tripped over him in an attempt to flee the area where people were fighting."  Mem.Brf. at 6.

I agree with Plaintiff that in this case, it would have been reasonable for the insurer to decide that while the amended complaint alleges negligence, it contains no facts to support that conclusion.  A mere assertion of a negligence theory, without more, is not sufficient to obligate an insurer to defend based on the complaint.  See Lopez v. New Mexico Public Schools Ins. Authority,117 N.M. 207, 209 (N.M. 1994) ("In determining the applicability of [an] exclusion, [the] focus must be on the origin of the damages, not the legal theory asserted for recovery")

(citations omitted).  For example, in <u>State Farm Fire & Cas. Co. v. Mhoon</u>, 31 F.3d 979, 985

(10th Cir. 1994), the insured had shot a neighbor and coverage had been denied based on a

policy which included only accidental harms.  The insured argued that the shooting was possibly

in self-defense and therefore not an excluded event.  The Tenth Circuit affirmed the district

court's grant of summary judgment to the insurer, finding that while the complaint alleged that

the insured's acts were accidental, "it offer[ed] no facts whatsoever that suggest this was the

case."  31 F.3d at 985.

     Defendant relies on <u>Ruiz</u> to argue that Western Heritage is bound to defend the

underlying <u>Lopez</u> case even if the complaint "fails to state facts with sufficient clarity so that it

may be determined from its face whether or not the action is within the coverage of the policy,

provided the alleged facts tend to show an occurrence within the coverage." 36 F.Supp.2d at

1312.  However, a reasonable fact finder could surely view the amended complaint, not as

suffering from insufficient clarity, but as lacking specific facts or allegations that could support a

conclusion that the assailants' acts could have resulted from negligence.  A reasonable fact

finder could easily characterize paragraph 78 in the amended complaint more as an attempt to

color the facts alleged in the original complaint ("it is unknown what the intent of such

individuals may have been") than the addition of new assertions to support a negligence claim.

Such reasonable inferences preclude summary judgment on this theory.

     Defendant offers deposition statements of Keith Shanks, senior claims examiner, from

another, unrelated case, for the proposition that where a complaint alleges intentional and

unintentional conduct, a defense is owed even in the presence of an assault or battery exclusion.

Reply, Ex. 3.[3]  Mr. Shanks had testified that Western Heritage would be obligated to provide a defense on the basis of slip-and-fall allegations, although the complaint later raised assault and battery allegations.  These statements do not help Plaintiff's position because they beg the question in this case: whether the amended complaint adequately alleges unintentional as well as intentional conduct.  A negligence claim must rise from supportive allegations, and not simply a conclusory statement.  The case in which Mr. Shanks testified involved allegations of slip and fall, and have no bearing on, or similarity to, the facts alleged in this case.  Further, Mr. Shanks also testified in that case that if there had been no investigation that revealed the slip and fall allegation and there had simply been a claim for assault or battery, the exclusion in that policy would have applied and no defense would have been triggered.  Surreply, Ex. 15 at 36.

## II.     Expectation of Reasonable Insured

Defendant contends that Western Heritage cannot rely on the assault and battery exclusion because Club did not have the Policy in hand at the time of the injury, and further, Club had a reasonable expectation that it would be covered for assault and battery for acts of third persons.

Club claims that it did not receive the Policy until after the event had taken place, and after Peter Lopez suffered his injuries.  In a letter to Western Heritage dated March 31, 2006, Mr. Baker questioned whether Club had received notification "at any meaningful time" that the

---

[3]  Plaintiff was allowed to file a surreply on the basis that Club mentioned these depositions for the first time in its Reply.  Doc. 113.  Club was not a party to the lawsuit for which Mr. Shanks' deposition was taken, Fuemmler v. LDR, Inc., filed in New Mexico State Court, Second Judicial District Court, County of Bernalillo, No. D202 CV 2004-05507.  Western Heritage was involved in that lawsuit on a third-party claim filed by The Everest Group, a security compoany, against Western Heritage and in the insurance agency who sold the policy. See, Surreply at 2.

Policy would contain an assault and battery exclusion.  Mem.Br., Ex. 1, attachment F.

Club purchased the Policy for the period of October 30, 2003 to November 2, 2003.
Resp., Ex. 4E.  Bennie Martinez states that he received the Policy on November 3, 2006, after
the Lopez incident occurred.  Western Heritage has no evidence to refute this, stating only that it
has no responsibility for Club not having a copy in its possession before the effective date of the
Policy, because Club actually purchased the Policy on October 29, 2003 – one day before the
Policy's effective date of October 30th.

Western Heritage provides evidence that easily undercuts Club's "reasonable
expectation" argument.  Western Heritage provided to Mr. Martinez and his broker a policy
quote as early as August 6, 2003, which contains on its face a listing of an assault and battery
exclusion.  Resp. Ex. 4C, 4E.  Plaintiff states that Mr. Martinez did not notify Western Heritage
or its agent that it wished to purchase the Policy until October 29, 2003 – one day before the
Policy's effective date of October 30th.

The Court is unaware of any New Mexico case which holds that failure to provide an
insured with the policy by a certain time in itself precludes an insurer from enforcing the policy
provisions.  Cmp., e.g., Reiner v. U.S. Life Ins. Co. in the City of New York, 69 Fed.Appx. 965
(10th Cir. 2003) (insurer's failure to provide insured with copy of policy did not estop insurer
from enforcing provisions of policy).  Estoppel may occur in certain instances when reliance has
occurred on the part of the insured.   For example, in Willey v. United Mercantile Life Ins. Co.
128 N.M. 98 (Ct.App. 1999), the insurer was estopped from relying on a limitations period in the
policy because the insured had received a one-page document in lieu of the policy itself.
Because the document received by the insured did not mention a limitations period, the New
Mexico Court of Appeals concluded that the insured could have been led to reasonably believe

that the document contained all restrictions governing insurance coverage.

The doctrine of reasonable expectations applies "when the language of an insurance policy or representations of the insurance company lead an insured to reasonably expect coverage." Berlangieri et al v. Running Elk Corp., 132 N.M. 92, 96(Ct.App. 2002). Club does not provide any facts suggesting reliance on an expectation for coverage for injuries resulting from assault and battery. Instead, Defendant argues that the Court should examine the "dynamics" of the transaction to ascertain the reasonable expectations of the insured, relying on Barth v. Coleman, 118 N.M. 1, 5-6 (1994). However, Barth does not control here. The insured in that case had specifically requested insurance that would cover fights at his nightclub, but the policy that was ultimately obtained from the broker did not have such coverage. The policy was not delivered to the insured prior to the fight which resulted in the injury, although the injury was found to have arose from an assault and battery. In such a case, there would be a reasonable expectation that the policy would conform to insurance requested, even though the expectations "were in large degree created by the intermediaries involved in the transaction." 118 N.M. at 6. In this case, Club did not request coverage for harm result from assault and battery. Moreover, the initial policy quote which expressly listed an assault and battery exclusion was received by Mr. Martinez and his broker nearly three months *before* the injury occurred.

Defendant also contends that Western Heritage's reliance on the exclusion is not justified because Mr. Martinez was not informed about the scope of the exclusion to include assault and battery by third parties rather than Club's employees. This argument cuts against Club's argument that Mr. Martinez was not aware of the existence of the exclusion because it intimates that Mr. Martinez was in fact aware of the exclusion, but not its scope. Club presents no facts to suggest that its unilateral interpretation of the exclusion was based on either actual conversations

13

or an understanding between Mr. Martinez and Western Heritage (or Mr. Martinez' broker), as occurred in <u>Barth</u>.

Club maintains that the general rule under New Mexico law is that acts of assault and battery are covered in insurance policies unless they are committed by or at the direction of the insured.  The case cited by Defendant for this rule is <u>Wolff v. General Cas. Co. of America</u>, 68 N.M. 292, 295 (1961), but I find Defendant's interpretation of that case to be overly expansive. In <u>Wolff,</u>  the New Mexico Supreme Court addressed only the issue of whether the insured was covered for injuries to an individual resulting from his discharging a tear gas at an individual. The Court did not address coverage for third party acts.  In fact, the policy in that case did not contain an exclusion for intentional acts, nor did the policy mention "assault and battery."  In contrast, the express language in the assault and battery exclusion in the Policy issued by Western Heritage was framed to specifically exclude from coverage the acts of third parties, "including failure to warn, train or supervise, whether caused by or at the instigation or direction of the insured, his employees, patrons or any other person." Resp., Ex. 2B, Ex. 3E at page 18.

Courts have long held that the insured has the duty of reading the policy he purchases. <u>Griego v. New York Life Ins. Co.</u>, 44 N.M. 330 (1940).  Plaintiff notes that Mr. Martinez did not question the exclusion or its scope at the time he received the Policy, nor did he request a change when he requested the same Policy again in 2004.  Given the above facts, regardless of whether Mr. Martinez had the Policy in his hand at the time it became effective, a reasonable fact finder could find that Mr. Martinez had knowledge of the assault and battery exclusion prior to the event; had no discussions with Western Heritage or its agents to include coverage for assaults and batteries; was given no representations that such coverage would be included in the Policy; and thus could not be heard to say that he relied on the existence of coverage for such intentional acts.

I agree with Plaintiff that the outcome of Defendant's reasonable expectation argument is controlled by Berlangieri et al v. Running Elk Corp.,132 N.M. 92 (Ct.App. 2002), where the insured also contended his reasonable expectation of coverage trumped an exclusion.  The insured in that case, Running Elk Corp., ran a recreational lodge.  The insurance agent was aware of the lodge's activities, which included horseback riding.  However, the policy actually obtained had a "Saddle Animal Liability Exclusion" that precluded coverage for claims arising from bodily injury incurred from contact with a saddle animal.  The insured argued that he had a reasonable expectation that the coverage obtained would cover horseback riding, although he did not claim that he expressly discussed this coverage with the insurer.  The New Mexico Court of Appeals affirmed the trial court's decision that the insured could not reasonably have expected saddle animal coverage as a matter of law.

Likewise, in the instant case, a "dynamics of the transaction" analysis fails to create a reasonable expectation of insurance coverage for assaults and batteries between patrons of Mr. Martinez' Halloween party and third parties.  Mr. Martinez did not specifically request insurance covering assaults and batteries between patrons of his Halloween party and third parties, nor is there any evidence of discussions, conversations or other circumstances involving Mr. Martinez' broker or any agent of Western Heritage, which would give rise to such an inference.

Club contends that Berlangieri is not controlling because the insured in that case had the policy in hand at the time of the event.  However, the holding in that case turned on the opportunity the insured had to know about the exclusion despite the insured's mistaken assumption that coverage existed, rather than the exact date the Policy was in the hand of the insured.  Moreover, while Mr. Martinez maintains he did not receive the Policy prior to the Lopez incident, there is evidence that he received the initial policy quote which listed the

15

exclusion on its face three months prior to the event, and that he purchased the Policy just one day before the event.

Given these facts, notwithstanding Club's proclaimed subjective expectation, a fact finder could conclude that Defendant did not have a reasonable expectation of coverage for assaults and batteries. A fact finder could also find that Mr. Martinez' unilateral interpretation regarding the scope of the assault and battery exclusion did not arise from a reliance on discussions, conversations, or understandings between himself and Western Heritage or Mr. Martinez' insurance broker. Thus, summary judgment is denied on this basis.

### III.    Waiver Based on Denial of Defense

Defendant argues that Western Heritage waived its policy defenses by improperly denying a defense when the Complaint and First Amended Complaint were tendered and then later changing its coverage position and defending. "When an insurance company unjustifiably fails to defend it becomes liable for a judgment entered against the insured and for any settlement entered into by the insured in good faith." Valley Imp. Ass'n, Inc. v. U.S. Fidelity & Guar. Corp. 129 F.3d 1108, 1125 (10th Cir. 1997).

The (First) Amended Complaint ("amended complaint") was filed on March 7, 2006, after Western Heritage first rejected tenders of defense by Mr. Martinez based on the initial complaint. There is some confusion regarding when Western Heritage first received its copy of the First Amended Complaint, which contained the new paragraph 78. A letter written by Mr. Shanks to Mr. Baker, which includes a chronology of events, states that Western Heritage first received a copy of the amended complaint on March 29, 2006. Mem.Brf., Ex. 7 (page 6). Club maintains that when Western Heritage denied a defense on March 14, 2006 (Mem.Brf., Ex. 1), Plaintiff had already received a copy of the amended complaint. Plaintiff's response brief

16

suggests that Club's depiction of the chronology may be accurate, in stating that Western Heritage concluded a defense was not owed upon first reviewing the amended complaint. See, Resp. at 19-20. However, even if Western Heritage initially denied a defense based on the amended complaint, I find that Defendant is not entitled to summary judgment based on a waiver theory.

The key word in the analysis is "unjustifiable." Whether an insurer has a duty to defend is determined by comparing the factual allegations in the complaint with the insurance policy. American Employers' Ins. Co. v. Continental Casualty Co., 85 N.M. 346, 348 (1973). "Only where the allegations are completely outside policy coverage may the insurer justifiably refuse to defend." State Farm Fire & Casualty Co. v. Price, 101 N.M. 438, 442 (Ct.App.) cert. denied, 101 N.M. 362 (1984) overruled on other grounds, Ellingwood v. N.N. Investors Life Ins. Co., 111 N.M. 301(1991).

In my earlier discussion, I concluded that Defendants are not entitled to summary judgment on the issue of coverage based on the First Amended Complaint. I noted that a reasonable fact finder could find that the "new" allegations in paragraph 78 were more an unsupported conclusion or speculation rather than facts. As a result, there is a reasonable inference that Plaintiff's denial of a defense was not "unjustifiable."

Club relies on several cases to argue that Western Heritage was obligated to provide a defense based on the amended complaint, but those cases are inapposite. In Lopez v. New Mexico Public Schools Ins. Authority, 117 N.M. 207, 209 (N.M. 1994), the complaint consisted of two discrete categories of claims. Claims of sexual molestation were clearly outside of policy coverage, and thus did not trigger a duty to defend. The complaint also alleged general civil rights violations. The court was determined that it was unclear whether these claims purportedly

17

arose out of the alleged sexual misconduct.  That situation is quite different from the First

Amended Complaint filed by Peter Lopez.  The allegations do not fall into discrete categories

where one set of allegations are clearly outside coverage, and other allegations are less clear for

a coverage determination.  They arise from only one source: the stabbing and beating attack on

Peter Lopez.

Two other cases on which Defendant relies, State Farm Fire and Casualty Company v.

Ruiz, 36 F.Supp.2d 1308, 1318 (D.N.M. 1999),[4] and Valley Improvement Assoc. Inc. v. United

States Fidelity & Guaranty Corp., 129 F.3d 1108 (10th Cir. 1997), are distinguishable because in

those cases, the insurer had at all times denied a defense.  In the case at bar, assuming Western

Heritage had already received the amended complaint by March 14, 2006 when it rejected

tenders of defense by Club and the City, the insurer changed its position within six weeks.  In a

letter dated April 28, 2006, the insurer agreed to provide a defense, subject to a reservation of its

policy defenses.

Plaintiff relies on Martin v. West American Ins. Co et al., 128 N.M. 446 (Ct.App. 1999),

noting that in that case, the insurer assumed a defense after being provided with additional

information between the time of the first review and the decision to provide a defense.  The

underlying case in Martin involved a stepfather accused of battery by his stepdaughter.  The

additional information forwarded to the insurer was the stepfather's deposition testimony, in

which he testified that his injuries were unintentional.  The New Mexico Court of Appeals

agreed with the trial court that the insurer had denied coverage in good faith prior to receiving

the deposition testimony.

---

[4] Ruiz was also cited by Defendant for support in its earlier argument that the allegations
in the First Amended Complaint obligated the insurer to defend.

I agree with Defendant that <u>Martin</u> is not very helpful to Plaintiff's position, because Western Heritage appears to concede that it refused a defense even after receiving the amended complaint, in contrast to <u>Martin</u> where the insurer immediately undertook the defense upon being provided the deposition testimony.  That being said, however, Plaintiff's denial of a defense based on the amended complaint does not result in a waiver of its policy defenses, for several reasons.  A waiver may result where the denial of a defense is unjustifiable, but the facts in this case could support a finding or strong inference that Plaintiff did not unjustifiably deny a defense based on the "additional" information contained in the amended complaint.

Moreover, "under New Mexico law, the insurer has waived defenses not relied on in its formal denial of coverage, but only if, the insured makes a showing of 'detriment or prejudice.'" <u>Valley</u>, 129 F.3d at 1118-19.  Defendant has not made such a showing. Western Heritage reconsidered its denial based on the amended complaint in a matter of weeks.   The Court is unaware of New Mexico case law which states that denial of a defense is irrevocable.  Western Heritage was entitled to reconsider and offer a defense while at the same time reserving its rights, as long as the delay caused no detriment or prejudice to the insured.  Club claims that the denial, although ultimately withdrawn, caused prejudice because Plaintiff breached its contract with Club and therefore Club did not get what it paid for.  This argument assumes that under the terms of the Policy, Western Heritage owed Club a defense.  That assumption cannot be made as a matter of law, since it can be inferred that Plaintiff's denial of a defense based on the amended complaint was justified.  Also, Defendant is hard put to show detriment or prejudice because Western Heritage offered to pay the costs of defense from the date of the Defendant's original tender of defense.  Resp., Ex. 3D.

Club attempts to use certain deposition statements of James Campbell's deposition from

another, unrelated case[5] for the proposition that it is Western Heritage's typical practice to

consult counsel before denying a defense. Reply, Ex. 1.  Defendant's characterization of Mr.

Campbell's statements overreaches.  Mr. Campbell does not suggest any practice of Western

Heritage that is "typical" – in fact, the word "typical" is not used at all.  The few statements

offered by Club refer to some unidentified claims, in which a request was made for a coverage

opinion from coverage counsel, and where in those instances, the company followed the advice

of coverage counsel.

Accordingly, Defendant Club is not entitled to summary judgment on the theory that

Western Heritage waived its policy defenses by improperly denying a defense when the

company offered a defense after initially denying a defense based on the initial complaint and

the amended complaint.

**IV.     Waiver Regarding Plaintiff's Reservation of Rights**

Last, Club contends that Western Heritage lost its ability to reserve any rights when it

substituted its counsel for Club's in the <u>Lopez</u> lawsuit, knowing that Club permitted that

substitution only if a defense was to be provided without any reservation of rights.

Mr. Don Bruckner was retained by Western Heritage to defend Club in the <u>Lopez</u>

litigation following Western Heritage's offer to provide a defense, subject to a reservation of its

rights. Mem.Brf., Ex. 4.  At the time, Club was already represented by Mr. Baker.  Mr. Baker

and Mr. Selman, coverage counsel for Western Heritage, corresponded several times in April

and May 2006.  Western Heritage stated repeatedly that it would provide the defense subject to a

reservation, and Club held steadfast to its position that Club would only accept Mr. Bruckner's

---

[5]  Mr. Campbell's deposition is also from the <u>Fuemmler</u> litigation in New Mexico state
court.

services if Western Heritage provided the defense without a reservation of rights.  Mem.Brf.,
Exs. 2 & 7; Resp., Ex. 2E.  According to Mr. Bruckner's affidavit, Mr. Bruckner contacted Keith
Shanks to obtain his direction on whether to proceed with submitting a motion to withdraw and
substitution of counsel.  Mr. Shanks was familiar with Club's position because he had been
copied on Mr. Baker's letters to Mr. Selman. Mr. Bruckner proceeded with his motion for
substitution of counsel, which was granted by the state court on May 23, 2006.  When Mr.
Bruckner became aware that Western Heritage planned to file a motion to intervene for a
decision on the coverage issues, he advised Club to obtain other counsel if Club wished to
oppose the motion.  Mr. Baker reentered his appearance on behalf of Club in the Lopez litigation
when Western Heritage filed the motion to intervene. The motion was denied.  Mem.Brf., Ex. 4.

It is generally recognized that coverage defenses may be properly preserved by a
reservation of rights agreement.  American Emp. Ins. Co. v. Crawford, 87 N.M. 375, 380 (1975).
It is undisputed that Club ultimately accepted Western Heritage's offer of defense.  Club
contends that its insistence that it would accept a defense only without a reservation of rights by
Plaintiff is sufficient to result in a waiver of Plaintiff's policy defenses.  However, an insured's
consent is not necessary in order for an insurer to retain its reservation of rights.  See, Draft
Systems, Inc. v. Alspach, 756 F.2d 293, 296 (3d Cir. 1985) (reservation of rights letters given
same effect as a nonwaiver agreement, interpreting Pennsylvania law); Crawford v. Ranger Ins.
Co., 653 F.2d 1248, 1253 (9th Cir. 1981) (insured's consent was not necessary for insurer's
reservation of rights notice to be effective, and therefore, insurer did not waive its right to rely on
exclusionary clause).  Thus, Club's refusal to acquiesce to Western Heritage's reservation of
rights does not result in a waiver of Western Heritage's policy defenses, including its reliance on
the assault and battery exclusion.

21

Waiver is the intentional relinquishment or abandonment of a known right.  <u>Jackson Nat.</u> <u>Life Ins. Co. v. Receconi</u>, 113 N.M. 403, 412 (1992).  Parties do not dispute the contents of the correspondence which passed between Mr. Baker and Western Heritage or its agents.  I find no inference of an intent on Western Heritage's part to give up any of its policy defenses.  Rather, its intent to continue relying on a reservation of rights was expressed frequently and unambiguously.  <u>See</u>, <u>e.g.</u>, Resp., Ex. 3C (April 28, 2006 letter); Resp. 3D (April 28, 2006 letter), Resp., 3E (May 5, 2006 letter); Resp., Exs. 7, 8, & 9.  Accordingly, summary judgment is not appropriate on this issue.

**THEREFORE,**

**IT IS ORDERED** that the Motion for Summary Judgment Denying Western Heritage's Claim for a Declaration that it Owes No Defense, filed by Club Hell LLC and Bennie Martinez ("Club") (Doc. 53), and Peter Lopez' joinder in this motion **(Doc. 63)** is hereby DENIED for reasons set forth in this Memorandum Opinion and Order.

_____

UNITED STATES DISTRICT JUDGE